**GUCCI AMERICA, INC. and Chanel, Inc., Plaintiffs,**

v.

**ACCENTS; E. Kramer & Company d/b/a/ Accent on You; Ellen Kramer; Adele Kauff, Inc.; Richard Kauff; Jennifer Kauff; Triangle Trading, Inc. d/b/a Miami Duty Free Zone and Steven Facella a/k/a Steven Fichella; Craig Bennett; Joanna Fels; Windsor Marketing, Inc. a/k/a Windsor Trading; Felco, Inc. a/k/a Felco Bros. Inc. and Felco International Inc.; Consolidated Traders, Inc.; Menachem Fellig a/k/a Mendy Fellig and Max Fellig; Fayegiel Fellig a/k/a Faye Fellig and Faygie Fellig; and John Does 1 through 20, Defendants.**

**No. 96 Civ. 9575 (JSR).**

United States District Court, S.D. New York.

Feb. 28, 1997.

Milton Springut, of Kulow, Springut and Bressler, New York City, Laurence, Kramer, White Plains, NY, for plaintiffs.

Allen R. Morganstern, of Scully, Scott, Murphy & Presser, Garden City, NY, Bruce Lederman, of Lederman, Abrahams and Lederman, Massapequa, NY, Richard Saccoccio, Boca Raton, FL, for defendants.

## MEMORANDUM ORDER

RAKOFF, District Judge.

In The Importance of Being Earnest, the hero Jack, who has been masquerading as a man named Ernest, reveals that as an infant he was left abandoned in "a hand-bag—a somewhat large, black leather hand-bag, with handles," which in turn precipitates disclosure from his abandoner that Jack's real name actually is Ernest—and all ends happily.[1] In the case at bar, it is the lineage of the handbags that is in issue. Defendants maintain that certain handbags alleged to be Gucci counterfeits are really overruns that Gucci's own manufacturers sold into the "gray" market and are therefore legitimate. The Court, however, finds that this is simply amusing fiction.

The matter is before the Court in response to seizure and restraining orders issued by two judges of this Court pursuant to the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116 et seq.[2], and executed against the named defendants. Following substantial seizures, all defendants except Accents, E. Kramer & Company d/b/a Accent on You, and Ellen Kramer, filed challenges to the seizures and to the continuation of the orders.[3] See 15 U.S.C. § 1116(d)(10)(A). Plaintiffs, for their part, moved, pursuant to statutory requirements, to convert the initial restraining orders to preliminary injunctions. See 15 U.S.C. § 1116(a). Plaintiffs also moved, pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to enjoin defendants Triangle Trading, Inc. and Steven Facella from pursuing an action in the Southern District of Florida entitled Triangle Trading, Inc. v. Gucci America, Inc., Case No. 97–6006–CIV.

A lengthy evidentiary hearing was held on February 3, 1997 with respect to all such motions. After full consideration of the testimony there presented, as well as the written submissions and oral arguments of counsel, the Court, on February 11, 1997, denied defendants' motions challenging the seizures and orders and granted plaintiffs' motions for preliminary injunctions against all defendants. See Order of February 11, 1997.[4] This Memorandum will serve to confirm that order and briefly to state the primary reasons for the Court's decision.

■ Defendants initially challenge whether plaintiffs presented the Court at the outset with sufficient grounds to issue the ex parte seizure orders. Specifically, defendants contend that plaintiffs, in their ex parte submissions upon which the seizure orders were based, failed adequately to satisfy the numerous preliminary requirements for such orders set forth in 15 U.S.C. § 1116(d)(4). See transcript of hearing of February 3, 1997 ("Tr."), volume II, at 66–75. Plaintiffs, for their part, dispute whether this issue is even properly before the Court, since defendants have not sought to proceed under 15 U.S.C. § 1116(d)(11), which provides that "[a] person who suffers damage by reason of a wrongful seizure under the [statute] has a cause of action against the applicant for the order under which such seizure was made."

■ The Court is not prepared to hold that this statutory remedy is the sole remedy available to a defendant whose property is the subject of an improperly-issued seizure order. As a general matter, the fact that a court-ordered seizure (accomplished, under the Act, with the assistance of the U.S. Marshals) arises from the application of a private party in a civil action does not exempt it from scrutiny under the Fourth Amendment. See Soldal v. Cook County, Ill., 506 U.S. 56, 60–62, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992). Indeed, when a private and interested party solicits judicial authorization for the kind of search and seizure that is normally reserved to Government agents, there is an obvious potential for abuse. See Young v. United States ex rel Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740

---

1. Oscar Wilde, The Importance of Being Earnest (1895).

2. For the background of that Act generally, see Rakoff and Wolff, "Commercial Counterfeiting and the Proposed Trademark Counterfeiting Act," 20 Am.Crim. L.Rev. 145 (1982).

3. Defendants Accents, E. Kramer & Co., and Ellen Kramer consented to the preliminary injunction sought by plaintiffs.

4. The order also denied, as moot, the motion under the All Writs Act.

(1987). Accordingly, such responses to Fourth Amendment violations as suppression of unlawfully-seized evidence may well be available to victims of unlawfully-obtained seizure orders under the Trademark Counterfeiting Act, even if the goods prove in fact to be counterfeit.

■ The Court need not reach this issue, however, for here all the careful requirements for issuance of the seizure orders were met, and thus the seizure orders did not violate the defendants' Fourth Amendment rights. *See Reebok Int'l v. Su Youn Pak*, 683 F.Supp. 929, 930 (S.D.N.Y.1987) (holding that the statutory requirements under the Trademark Counterfeiting Act of 1984 satisfy Fourth Amendment requirements). *See also Time Warner Entertainment Company v. Does*, 876 F.Supp. 407, 411 (E.D.N.Y.1994). Specifically, the Court concludes, upon *de novo* review of the affidavits and other proffers of proof that were before this judge and another judge of this Court in support of the seizure orders, that those proffers provided specific facts more than sufficient to warrant finding each and every one of the statutory prerequisites to the issuance of each of those orders. *See* 15 U.S.C. § 1116(d)(4)(B).

In this regard, it is important to note that the plaintiffs' applications for these order were cumulative in nature. The initial application was made by plaintiff Gucci America, Inc. against defendants Accents, E. Kramer & Co. d/b/a Accent on You, and Ellen Kramer (the "Kramer Defendants") on December 20, 1996. It included, among much else, sworn affidavits proffering detailed evidence that Gucci maintains tight control over the distribution of its trademarked products to retail outlets in the United States, that Gucci had not supplied these defendants' stores with Gucci products, that Gucci's investigators had nonetheless purchased handbags and other items bearing Gucci from defendants' stores, that close inspection revealed that these items were counterfeit, and that there was good cause to believe defendants would destroy or otherwise dispose of these items if notified of Gucci's investigation. *See, e.g.*, Declarations of Dava L. Yavetz, Alessandro Poggiolini, Karen Lombardo, and Milton Springut, all dated December 13, 1996.

■ The seizure order that issued on this showing led directly and immediately to the seizure of counterfeit Gucci goods in the possession of the Kramer Defendants, who, as noted, have declined to challenge the seizure. Furthermore, records seized and statements obtained from the Kramer Defendants during the course of these seizures directly implicated defendants Adele Kauff, Inc., Richard Kauff, and Jennifer Kauff (the "Kauff Defendants") as the immediate suppliers of the counterfeit goods seized from the Kramer Defendants. Together with other information provided by plaintiffs, this evidence provided more than ample basis for the subsequent extension of the seizure order to the Kauff Defendants. *See* Order, December 23, 1996.

Once again, moreover, this further order led to the seizure of counterfeit goods and incriminating documents. Among other things, the documents seized from the Kauff Defendants established that its counterfeit Gucci goods were obtained from defendants Triangle Trading, Inc. a/k/a Miami Duty Free Zone, Duty Free Zone and Duty Free Brokers, Inc., and Steven Facella a/k/a Steven Fichella (the "Triangle Defendants") and that the other prerequisites to further extension of the seizure order to encompass these new defendants were present. Moreover, documents seized from the Kauff Defendants further established that the Triangle Defendants were also offering for sale counterfeit Chanel goods. *See* Declaration of Adrienne Hahn. Accordingly, on December 24, 1994, the seizure order was extended by the Honorable Charles L. Brieant of this Court to the Triangle Defendants and to Chanel counterfeit goods as well as Gucci counterfeit goods.

The subsequent execution of this order led to the seizures of still further significant quantities of counterfeit items bearing the Gucci and Chanel trademarks. The documents seized at the same time showed that the goods had been supplied to the Triangle Defendants by defendants Menachem Fellig, Faye Fellig, Windsor Marketing, Inc., Consolidated Traders, Inc., Felco Bros., Inc., and Felco Inc. (the "Fellig defendants"). Based on this showing, as well as voluminous supporting evidence, *see* Declaration of Milton

Springut, January 13, 1997, Exhibits A–N, the Court, on January 14, 1997 extended its seizure order one last time to encompass these new defendants.

■ Even the most cursory review of plaintiffs' proffers, when taken in the context of the history just described, demonstrate that there were well-founded grounds to issue the various seizure orders at the time applied for. The Act further requires, however, that promptly after such seizures, the seizing party must prove, at an adversarial hearing before the Court, facts sufficient to support the seizures, failing which the seizures and seizure orders will be dissolved or modified. Conversely, to convert the temporary restraining orders into preliminary injunctions, the seizing party must prove (a) that continuation of the injunctions is necessary to prevent irreparable harm, and (b) either (i) that the seizing party has a likelihood of success on the merits, or (ii) that there exists sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation and a balance of the hardships tipping decidedly in favor of the movant. *See* 15 U.S.C. § 1116(d)(10)(A); *see also Malkentzos v. DeBuono*, 102 F.3d 50, 54 (2d Cir.1996).

It was for these dual purposes that the Court held an evidentiary hearing, for over six hours, on February 3, 1997.[5] Although defendants spent part of the hearing attempting to argue their good faith, that issue is largely irrelevant, from the standpoint of injunctive relief, to the issues before the Court. The main contest centered, therefore, on whether the seized goods were in fact counterfeit or simply "gray market" genuine goods that escaped plaintiffs' normal channels of distribution.

■ This part of the hearing focused, in particular, on the testimony of the parties' competing experts. For plaintiffs, Luciano Chiarelli, head of the quality control division of Guccio Gucci S.P.A. (the parent corporation of plaintiff Gucci America), testified that the "Gucci" handbags and belts seized from the defendants could be distinguished from

genuine Gucci handbags and belts by material differences in the size of the handles, the quality of the eyeclasps and buckles, the quality of the leather, etc. *See, e.g.,* Tr. I at 81–84. (Similar testimony regarding the Chanel goods was given by a Chanel employee, Adrienne Hahn, *see* Tr. II at 5.). Also, Mr. Chiarelli testified that Gucci factories used only "force fitted" magnetic clasps for their handbags, whereas the counterfeit bags, upon being cut open, were found to have clasps that were attached to the leather of the handbags by means of screws. Tr. II at 5.

Defendants countered with the testimony of Robert Blau, formerly a manufacturer and presently a retailer of medium quality leatherware in New York, *see* Tr.II at 22–37, who opined that the outward differences to which plaintiff's expert had referred were either indistinguishable in fact or not always a reliable basis for distinguishing real from counterfeit goods. In dramatic fashion, Blau produced a handbag newly purchased from a Gucci store in New York and testified that it was indistinguishable from one of the seized handbags in evidence that the plaintiffs claimed was counterfeit. But when, at the Court's suggestion, the handles of the two handbags were cut open by Mr. Blau in open court, the newly-purchased Gucci bag had a magnetic clasp, while the seized bag had a screw clasp. *See* Tr. II at 44–45.

For these and numerous other reasons, including demeanor and credibility, the Court credits the testimony of plaintiffs' experts and finds itself completely unpersuaded by defendants' expert. Furthermore, after a careful review of the entire transcript, the Court finds overwhelming proof of the counterfeit nature of the seized goods, the need for continuation of the original orders and of preliminary injunctive relief against defendants to prevent irreparable harm to plaintiffs, the likelihood that plaintiffs will prevail on the merits of at least the present injunctive portions of their underlying claims, and all other elements necessary to the granting of the preliminary relief here requested.

**5.** The hearing had originally been scheduled for several weeks earlier but was adjourned at the request of defendants. *See* 15 U.S.C. § 1116(d)(10)(A).

Accordingly, this Court's Order of February 11, 1997 denying defendants' motions challenging the seizures and seizure orders and granting plaintiffs' motions for preliminary injunctions against all defendants is hereby confirmed in all respects. Promptly upon receipt of this Order, the parties are directed to jointly call this Court's new Chambers in Manhattan, at (212)805–0401, to schedule further proceedings in this case.

SO ORDERED.